**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KIANA L. HEFFLIN, *o.b.o.* LDS, | ) | CASE NO. 1:20-CV-01414 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, *Acting Comm'r of Soc. Sec* | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Kiana L. Hefflin (Plaintiff), on behalf of her minor child LDS, challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner), denying an application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. (Act).[1]  This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties. (R. 10). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

## I. Procedural History

On February 2, 2018, Plaintiff, on behalf of her child LDS, filed an application for children's SSI, alleging a disability onset date of November 21, 2017. (R. 9, Transcript (Tr.) 113-119). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 53-112). Plaintiff participated in the hearing on March 21, 2019, was represented by counsel, and testified. (Tr. 33-52). On May 30, 2019, the ALJ found LDS was not disabled. (Tr. 29). On April 27, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 11 & 13).

Plaintiff asserts the following assignments of error: (1) "[t]he ALJ's functional equivalence finding was the product of legal error and was not supported by substantial evidence" and (2) "[t]he ALJ's credibility determination is unsupported by substantial evidence." (R. 11, PageID# 442).

## II. Evidence

### A. Relevant Medical Evidence[2]

#### 1. Treatment and Education Records

On November 21, 2017, an Evaluation Team Report (ETR) was created to determine LDS's eligibility for special education services after she failed a kindergarten speech screener

---

[2]  The recitation of the evidence is not intended to be exhaustive. It focuses on those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

and exhibited difficulty with her academics. (Tr. 260). There were no concerns with gross motor skills or general health. (Tr. 256). It was agreed that further testing was needed. (Tr. 256-257).

On December 12, 2017, LDS completed the Kaufman Assessment Battery for Children (2d edition). (Tr. 269-270). LDS's full cognitive ability was below average, and she scored in the 6th percentile. *Id*. According to Jennifer Lewis, Ed.S., the school psychologist, LDS's "working memory and memory span skills are well developed and typical for her age. Areas of normative weakness for LDS were indicated by her performance within the Simultaneous and Knowledge indexes. She has difficulty with visual processing and problem solving with visual patterns (Simultaneous) and her skills are less developed in relation to language development and listening ability (Knowledge)." (Tr. 269).

On December 15, 2017, LDS's teacher, Nicole Norman, also completed an evaluation indicating that LDS had a reading MAP score of 134 and her skills/strengths included verbal comprehension. (Tr. 266). Her weaknesses included letter identification, sight words, and sounds. *Id*. In math, she had a MAP score of 129. (Tr. 267). LDS had difficulty learning at the same rate as peers, was easily distracted, and seemed to struggle with concepts. *Id*. She was friendly in her interactions with peers and participated in assigned activities. *Id*. Ms. Norman opined that LDS needs modified instruction, accommodations, extra time, modification in materials, redirect from her teacher, and extra instructions. *Id*.

On January 17, 2018, Ms. Lewis, the school psychologist, observed LDS in a classroom setting. (Tr. 264-265). She indicated that LDS's parents reported that LDS struggled greatly with homework. *Id*. Ms. Lewis indicated as follows:

> [LDS is] having difficulty acquiring the basics within reading, writing, and math which negatively impact her academic performance. [LDS] displays a rate of learning that appears to be significantly different than her peers. It will be

> important to determine further implications based upon the standardized testing
> results from this multi-factored evaluation. Based upon observations and
> intervention data she is a student who may benefit from having extended time to
> complete tasks, comprehension checks, corrective feedback, and multi-modal
> instruction.

(Tr. 265).

That same day, Michelle Pham, MA, CCC-SLP ("SLP Pham"), a speech therapist,

"administered the Clinical Evaluation of Language Fundamentals Preschool Second Edition

(CELF Preschool 2) to determine [LDS's] ability to comprehend and use language as compared

to typically developing same aged peers." (Tr. 271). LDS received a receptive language

(understanding) score of 63 and an expressive language (use) score of 83, and a core language

(overall language skills) score of 79.[3] *Id*. The receptive language score was indicative of a severe

impairment while the expressive language score was indicative of a mild impairment. *Id*. Due to

the significant discrepancy between the two scores, SLP Pham administered a second battery of

language tests, cautioning that "[t]he results of the CELF Preschool 2 should be interpreted with

extreme caution as they are not believed to truly represent LDS's language abilities." *Id*. SLP

Pham explained that "[o]n this assessment, [LDS] exhibited average skills using grammar within

her spoken dialect of English, demonstrating understanding of age level concepts, and repeating

sentences verbatim. [She] had mild difficulty labeling pictured actions and objects. She

experienced moderate difficulty with identifying pictures by description. She had severe

difficulty following directions containing concepts and/or multiple steps and with identifying and

explaining word relationships." *Id*. SLP Pham also administered "the oral portions of the Oral

and Written Language Scales second edition (OWLS 2) to further assess her receptive and

---

[3] In the CELF Preschool 2 test, the average range of scores runs from 85-115. (Tr. 271).

4

expressive language skills." (Tr. 272). Testing revealed mild impairment with listening comprehension and moderate impairment with oral expression. *Id*. "Articulation, pragmatics, voice, and fluency were grossly observed to be within functional limits for age level expectations at this time." (Tr. 272). SLP Pham concluded that LDS "presents with moderate receptive and expressive language disorder" and indicated that "[s]pecialized instruction in the area of communication is warranted." *Id*.

Also that same day, Jessica Klonk, MOT, OTR/L, an occupational therapist, assessed LDS, and recommended occupational therapy services to improve her fine and visual motor coordination. (Tr. 275-277). She was able to button/unbutton, zip/unzip, and snap/unsnap independently. *Id*. She "required minimal assistance/verbal cuing during first trial of shoe-tying, but was able to independently demonstrate in the second trial." *Id*.

On February 12, 2018, an Individualized Education Plan (IEP) was created. (Tr. 290-305). The school would provide LDS with weekly direct, small group instruction, monthly speech and language services, and monthly occupational therapy. (Tr. 297-298).

In January of 2019, an annual review of LDS's IEP plan indicated that she would continue to receive the same services (Tr. 205).

## 2. Medical and Educational Opinions Concerning Plaintiff's Functional Limitations

On April 4, 2018, State Agency psychologist Paul Tangeman, Ph.D., examined the evidence of record and found that LDS had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and moving about and manipulating objects. (Tr. 56-57). Dr. Tangeman also assessed no limitation in the claimant's ability to care for herself and her health and physical well-being. (Tr. 57).

On April 9, 2018, State Agency pediatrician Uma Gupta, M.D., endorsed the above assessment. In addition, Dr. Gupta opined that LDS's alleged symptoms were not substantiated by the objective medical evidence alone and were only partially credible considering the evidence of record. (Tr. 58). Dr. Gupta explained that the ADL form indicated that claimant had difficulty communicating, which was consistent with the speech evaluation in the file. *Id*. However, Dr. Gupta found the assertion that LDS was only understood some of the time by others not consistent with the finding that LDS's articulation was within normal limits during the same speech evaluation. *Id*. Dr. Gupta found the assertion that the claimant had difficulty with comprehension and concentration was consistent with her IEP and testing in the file. *Id*. Finally, Dr. Gupta noted that while no physical impairments were alleged, the evidence shows that claimant had delayed fine motor skills and difficulty with fine motor tasks. *Id*.

On May 17, 2018, State Agency psychologist Robyn Murry-Hoffman, Ph.D., examined the evidence of record and found that LDS had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and moving about and manipulating objects. (Tr. 66-67). Dr. Murry-Hoffman also assessed no limitation in the claimant's ability to interact and relate with others, care for herself, and her health and physical well-being. (Tr. 67).

On May 23, 2018, State Agency pediatric physician Obiaghanwa Ugbana, M.D., endorsed the above assessment. In addition, Dr. Ugbana reiterated the same opinions as to the consistency of LDS's alleged symptoms as Dr. Gupta. (Tr. 68).

**B. Relevant Hearing Testimony**

At the hearing, Plaintiff, LDS's mother, testified that LDS gets along "very well" with her five brothers and sisters. (Tr. 42). LDS performs chores such as wiping off the kitchen table and

6

vacuuming the floor. *Id*. LDS also keeps her room clean when told to do so. (Tr. 43). LDS can take a bath by herself and dress herself, but she needs help with brushing her teeth and doing her hair. (Tr. 42, 48). LDS does, however, have trouble putting on her shoes. (Tr. 49-50).

At the time of the hearing, LDS was in first grade. (Tr. 44). She rides the bus to school and her mother walks her to the bus stop and meets her there when she returns. *Id*. LDS was on an IEP for speech. *Id*. Her grades were good in the first grade. (Tr. 45). LDS stated that she had five friends in school. *Id*. She had been receiving occupational therapy at school because she could not write her name well and has trouble using scissors, but no issues using spoons or forks. (Tr. 46-48). Plaintiff testified that LDS has trouble pronouncing words. (Tr. 47).

Plaintiff testified that LDS does not get homework, and that she does not know whether other kids in her class are assigned homework. (Tr. 49). Plaintiff stated that LDS needs help with classroom activities. *Id*. In response to questions from her attorney, Plaintiff indicated that LDS is unable to recount what happened at school that day when she comes home, cannot differentiate between words such as under and over, and does not know how to make change with money. (Tr. 50). LDS cannot perform even the simplest mathematical additions. *Id*. Plaintiff stated that LDS had a short attention span but could not give any examples when asked to do so. (Tr. 51). LDS is able to write some letters, but not all of them. *Id*.

### III. Disability Standard

To qualify for SSI benefits, "[a]n individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). To qualify, a child recipient must also meet certain income

and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

For children's disability claims, the regulations prescribe a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At step one, a child must not be engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). At step two, a child must suffer from a "severe impairment." 20 C.F.R. § 416.924(c). At step three, disability will be found if a child has an impairment, or combination of impairments, that meets, medically equals or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1; 20 C.F.R. § 416.924(d). To make this latter determination, the Commissioner assesses the functional limitations caused by the impairment(s). 20 C.F.R. § 416.926a(a). This involves the consideration a child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself/himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairment(s) results in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairment(s) functionally equal the listings and the child will be found disabled. 20 C.F.R. § 416.926a(d).

An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation means "more than marked." 20 C.F.R. § 416.926a(e)(3)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id*.

A "marked" limitation is one which seriously interferes with functioning. 20 C.F.R. § 416.926a(e)(2)(i). "Marked" limitation means "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning we would expect to find on

standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*.

If an impairment is found to meet, or qualify as the medical or functional equivalent of a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant was born on *** 2012. Therefore, she was a preschooler on January 29, 2018, the date application was filed, and is currently a school-age child (20 C.F.R. § 416.926a(g)(2)).

2.  The claimant has not engaged in substantial gainful activity since January 29, 2018, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: adjustment disorder, speech/language developmental delay, and enuresis (20 CFR 416.924(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.924, 416.925 and 416.926).

5.  The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6.  The claimant has not been disabled, as defined in the Social Security Act, since January 29, 2018, the date the application was filed (20 CFR 416.924(a)).

(Tr. 18-28).

First, the ALJ found LDS had marked limitation in the domain of acquiring and using information. (Tr. 21-23). The ALJ also found LDS had less than marked limitations in the following three domains: attending and completing tasks; interacting and relating with others;

and moving about and manipulating objects. (Tr. 23-27). The ALJ further found LDS had no limitations in the remaining domains of caring for yourself, and health and physical well-being. (Tr. 27-28).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignments of Error

#### 1. ALJ's Finding with Respect to Interacting and Relating to Others

Plaintiff's first assignment of error challenges the ALJ's finding that LDS did not have a

marked impairment in the domain of interacting and relating to others. (R. 11, PageID# 449-456). Specifically, Plaintiff contends that the ALJ's finding that LDS had less than marked limitations in the domain of interacting and relating to others was not supported by substantial evidence. *Id.* Plaintiff posits that a marked limitation in interacting and relating to others should have been found based upon the opinion and testing of SLP Pham and the results of her testing. *Id.*

The domain of interacting and relating with others considers "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Interacting means "initiating and responding to exchanges with other people, for practical or social purposes" by using "facial expressions, gestures, actions, or words." *Id.* Relating to other people means "forming intimate relationships with family members and with friends who are your age, and sustaining them over time." *Id.* Both require an individual "to respond appropriately to a variety of emotional and behavioral cues. You must be able to speak intelligibly and fluently so that others can understand you; participate in verbal turntaking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully." *Id.* A preschooler "should be able to socialize with children as well as adults" and "should begin to prefer playmates [her] own age and start to develop friendships with children [her] age." 20 C.F.R. § 416.926a(i)(2)(iii). A school-age child "should be able to develop more lasting friendships with children who are [her] age. [She] should begin to understand how to work in groups to create projects and solve problems. [She] should have an increasing ability to understand another's point of view and to tolerate differences. [She] should

be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. § 416.926a(i)(2)(iv).

The regulations offer some examples of limited functioning in this domain, but caution that the examples "do not necessarily describe a 'marked' or 'extreme' limitation." 20 C.F.R. § 416.926a(i)(3). Examples include if the child: (1) does not reach out to be picked up and held by a caregiver; (2) has no close friends; (3) avoids or withdraws from people she knows, or is overly anxious or fearful of meeting new people or trying new experiences; (4) has difficulty playing games or sports with rules; (5) has difficulty communicating with others (e.g. in using verbal and nonverbal skills to express herself, in carrying on a conversation, or in asking others for assistance); or (6) has difficulty speaking intelligibly or with adequate fluency. *Id*.

The ALJ concluded LDS had less than marked limitations in this domain. (Tr. 25). After setting forth some of the criteria and considerations relevant to this domain, the ALJ explained as follows:[4]

> In August 2013, the claimant was diagnosed with delayed speech. On June 22, 2015, the claimant's mother reported that the claimant's speech was now "ok," she had some enunciation problems, and she would "monitor" it (1F/2).

> The claimant's receives speech and language services at school (90 minutes per month) (14E/22).

> Ms. Hefflin testified that the claimant has trouble communicating with others because she cannot pronounce words. However, she also testified that the claimant gets along "very well" with her siblings, "great" with her, and she has friends at school. The record shows that the claimant has no behavior issues (1F/4) and she gets along "well" with others (3F/1 l). Furthermore, the claimant only receives speech and language services at school.

---

[4] The ALJ recognized that "[b]ecause communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community (20 C.F.R. § 416.926a(i) and SSR 09-5p)." (Tr. 24).

> Based on this evidence, the undersigned finds the claimant has a less than marked limitation in this domain.

(Tr. 25).

The court agrees with the Commissioner that Plaintiff's analysis focuses almost entirely on LDS's speech and language difficulties, which are undoubtedly relevant, but ignores the other relevant factors in this domain. (R. 13, PageID# 468-469). The evidence cited by the ALJ reasonably can be construed as illustrating that LDS does have friends and is not withdrawn from others. Further, Plaintiff does not identify any evidence suggesting Plaintiff has difficulty playing games with other children.

Second, the ALJ's finding was supported by the opinions of all four of the pediatricians and psychologists who examined the record with each opining that LDS had less than marked limitations in the domain of interacting and relating to others. The ALJ also expressly considered these opinions from the State Agency reviewing medical source and found them "persuasive because they are supported by the objective medical evidence and they are consistent with the school records and services received."[5] (Tr. 20). State Agency opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a

---

[5] The regulations now refer to the opinions of State Agency medical sources a "prior administrative medical finding." The medical opinions from medical sources as well as from prior administrative medical findings are now evaluated using the same factors. 20 C.F.R. § 416.920c(a).

claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work."). Thus, the ALJ's finding that LDS had less than marked limitations in interacting and relating to others is supported by substantial evidence in the form of four State Agency opinions.

Furthermore, it bears pointing out that SLP Pham's evaluation was authored on January 17, 2018—several months *before* the State Agency pediatricians and psychologists reviewed the record. (Tr. 271-272). Thus, the State Agency medical sources' opinions were *not* ignorant of SLP Pham's testing. To the contrary, the State Agency medical sources unambiguously reference SLP Pham's evaluation and, therefore undoubtedly factored in her testing results and opinion when arriving at their respective assessments in the six domains. (Tr. 55-57, 66-67). These same medical sources acknowledge LDS has some difficulty communicating—allegations consistent with SLP Pham's report. (Tr. 68). Nevertheless, the State Agency opinions accurately point out that LDS had articulation within normal limits during SLP Pham's evaluation. (*See* Tr. 58, 69, 272) ("Articulation, pragmatics, voice, and fluency were grossly observed to be within functional limits for age level expectations at this time."). Notably, the State Agency findings, based partially upon SLP Pham's testing, contradict LDS's mother's testimony that LDS had trouble

14

communicating with others because she could not pronounce words. (Tr. 20, 47, 57-58, 67-68).

Ultimately, the State Agency sources reasonably concluded that LDS could "communicate

effectively with others." (Tr. 59). The Commissioner further accurately points out that it is

appropriate for an ALJ to consider whether a medical source, here State Agency medical sources,

have "an understanding of our disability program's policies and evidentiary requirements." *See*

20 C.F.R. § 416.920c(c)(5). The ALJ, in turn, reasonably relied upon the four State Agency

opinions. The ALJ was not obligated to reiterate the State Agency source's reasoning regarding

SLP Pham's opinions and testing.

In addition, Plaintiff is incorrect in her contention that the ALJ ignored SLP Pham's testing.

Rather, the ALJ explicitly cited her evaluation when discussing the domain of acquiring and

using information. (Tr. 22, citing Exh. 3F/19. Tr. 271). Even if the court were to take issue with

the ALJ not discussing the findings of SLP Pham in greater detail or specifically in connection

with the domain of interacting and relating to others, it bears noting that SLP Pham did not offer

any opinion as to the level of limitation caused by LDS's speech or communicative impairments

in any of the six domains.[6] (Tr. 271-272). Plaintiff's conclusion that the level of impairment

identified by SLP Pham inherently necessitates a finding of marked limitations in the domain of

interacting and relating to others is little more than conjecture based on Plaintiff's own

interpretation of the evidence. Essentially, Plaintiff is asking the court to conduct a *de novo*

review of the LDS's school records, and find that the opinion of all four physicians and

psychologists who reviewed the evidence of record should be set aside based on said review, and

---

[6]  Plaintiff points to language in SLP Pham's report that state LDS is "significantly" impaired.
(R. 11, PageID# 454, citing Tr. 272). Plaintiff, however, overlooks SLP Pham's own conclusion
that these "significant" impairments resulted only in a "moderate receptive and expressive
language disorder." (Tr. 272).

find that the evidence can only be interpreted as supporting marked limitations in the disputed domain. This greatly exceeds the standard of review, however. This court's role, in considering a social security appeal, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 U.S. Dist. LEXIS 147362, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 146332, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).

Plaintiff's remaining arguments are also without merit. She asserts that LDS's test scores necessitated a finding that she had marked limitations in interacting with and relating to others and cites various test scores. (R. 11, PageID# 453-454). However, Plaintiff has not identified any regulations or clearly established binding precedent that compels an ALJ to find marked limitations in this specific domain based on testing results in the range scored by LDS. In fact, some of the testing results cited by Plaintiff do not appear to even be tangentially related to this domain, such as math scores. *Id*. Furthermore, Plaintiff's reliance on *Anderson on Behalf of M.C.B. v. Comm'r of Soc. Sec.*, No. 1:18 CV 662, 2019 WL 3574610 (N.D. Ohio Aug. 6, 2019) is misplaced. Therein, the court found error where "the ALJ did not discuss Plaintiff's speech and language impairments" under either the domain of acquiring and using information or the domain of interacting and relating to others. *Id*. at *11. By contrast, the ALJ herein specifically noted that "communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community." (Tr. 24) (citations omitted). Unlike in *Anderson*, the ALJ also discussed LDS's language impairments in significant detail when addressing the domain of

acquiring and using information. (Tr. 22). Quite simply, *Anderson* is inapposite.

Plaintiff's first assignment of error is not well taken.

### 2. Credibility Assessment

In the second assignment of error, Plaintiff asserts the ALJ's credibility evaluation of Plaintiff's hearing testimony was not supported by substantial evidence. (R. 11 at PageID# 456-457). She further argues that the ALJ utilized boilerplate language, and "never offered any reasons for discounting the testimony of Plaintiff." *Id*. After citing some evidence that Plaintiff believes should have been credited, she suggests that "the significant testing described in the statement of facts above highly support Plaintiff's and Claimant's testimony." *Id*.

An ALJ, however, is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). For example, "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.") (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation").

"In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a

single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017). Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (citing *Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

According to SSR 16-3p, evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms…."[7] 2017 WL 5180304 at *2-3. The ALJ's decision found the first step was satisfied and states that LDS's medically determinable impairments "could reasonably be

---

[7] "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two social security rulings, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the current SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

expected to produce the alleged symptoms." (Tr. 20).

After step one is satisfied, an ALJ—when considering the intensity, persistence, and limiting effects of an individual's symptoms—should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p at *4-8. The ALJ concluded that "the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 20).

Plaintiff takes issue with the ALJ's alleged failure to meaningfully discuss the following pieces of testimony: LDS cannot brush her teeth or hair by herself; she has trouble communicating with other people as she has trouble pronouncing words; LDS does not get homework while her classmates do;[8] LDS needs help with classroom activities; and LDS has difficulty putting on her shoes; she cannot add 2+2; and she does not know the difference between words like "big" and "little" and "over" and "under." (R. 11, PageID# 457).

---

[8] This assertion is questionable. When asked by her counsel whether LDS receives homework, Plaintiff—LDS's mother stated "no." (Tr. 49). When asked whether *other kids* received homework, LDS stated "yes," while Plaintiff stated that **she did not know**. (Tr. 49). LDS then changed her response to "no." *Id*. Therefore, it cannot reasonably be argued that the ALJ erred by failing to discuss any of the testimony related to homework as it is unclear whether LDS was treated any differently than her peers in this regard.

While Plaintiff's brief does list numerous aspects of hearing testimony, she has not explained with any clarity why she thinks these portions were rejected. Further, Plaintiff has not argued how crediting any or all of these statements would necessarily have resulted in a different finding in any of the six domains. Notably, Plaintiff has only taken issue with the ALJ's finding with respect to two domains in this case—interacting and relating to others and caring for oneself. With respect to interacting and relating to others, the ALJ credited much of Plaintiff's testimony regarding LDS's good relationships with family members and LDS having friends at school. (Tr. 25). Thus, even assuming for the sake of argument that there is some deficiency in the ALJ's credibility analysis, Plaintiff has not clearly delineated any impact on the ALJ's findings with respect to the only domain in contention.

In addition, Plaintiff has not developed any argument suggesting that problems with tying shoes or brushing hair would necessitate a finding of marked or greater limitations in the domain of caring for yourself, especially where Plaintiff testified that LDS could bathe and dress herself. (Tr. 43) With respect to LDS not knowing the difference between words like "big" and "little" and "over" and "under," the ALJ expressly mentions this testimony in the domain of acquiring and using information and found *marked* limitations in this domain. (Tr. 21-23).

When "remand would be an idle and useless formality[,]" courts are not required to "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6, 89 S. Ct. 1426, 22 L. Ed. 2d 709 (1969)) (further citation omitted); *accord Mischka v. Colvin*, No. 1:13-cv-1881, 2015 WL 778869, 2015 U.S. Dist. LEXIS 22054, at *14 (N.D. Ohio Feb. 24, 2015) (Lioi, J.).

Further, the decision adequately discusses the LDS's educational records and the opinions of the State Agency medical sources, which do not support the level of limitations alleged. The

decision states:

> At the time of application, Kiana L. Hefflin, the claimant's mother, stated that a
> learning disability, having an IEP, and an intellectual disability are the claimant's
> disabling conditions (2E/2). At the hearing, Ms. Hefflin testified that the claimant
> is in the first grade and she has an Individualized Education Program (IEP) for
> speech and a learning disability. She cannot add 2+2 and she only knows some
> letters of the alphabet. The claimant has trouble communicating with others
> because she cannot pronounce words. The claimant's attention span is "very
> short."

(Tr. 20). After concluding the claimant's limiting effects of these symptoms are not entirely
consistent with the medical evidence and other evidence in the record for the reasons explained
in this decision, the ALJ agreed with the opinions of four separate medical sources that LDS had
either less than marked or no limitations in five of the six domains.

It is also unclear why Plaintiff believes that some of the testimony referenced in her brief,
even if not expressly discussed in the decision, would have impacted the ALJ's findings. The
Sixth Circuit Court of Appeals has observed as follows:

> "An ALJ need not discuss every piece of evidence in the record for [the ALJ's]
> decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th
> Cir. 2004); *see also Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir.
> 1999) ("An ALJ can consider all the evidence without directly addressing in his
> written decision every piece of evidence submitted by a party. Nor must an ALJ
> make 'explicit credibility findings' as to each bit of conflicting testimony, so long
> as his factual findings as a whole show that he 'implicitly resolve[d]' such
> conflicts.") (citation omitted).

*Rottmann v. Comm'r of Soc. Sec.*, 817 Fed. App'x 192, 195-196 (6th Cir. 2020); *Bojarski v. Saul*,
No. 1:19cv1713, 2020 U.S. Dist. LEXIS 52315, at *36 (N.D. Ohio Mar. 6, 2020) ("The ALJ
need not provide a written evaluation of every piece of testimony and evidence submitted.")
(citations omitted); *see also Hill v. Astrue*, 295 Fed. App'x 77, 84 (7th Cir. 2008) (observing that
an "ALJ need not discuss every piece of evidence in the record").

The ALJ engaged in a sufficient credibility analysis, and was not required to analyze all seven factors, but only those factors germane to the alleged symptoms. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005) (Baughman, M.J.) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence"); *see also Wolfe v. Colvin*, No. 4:15-CV-01819, 2016 WL 2736179, at *10 (N.D. Ohio May 11, 2016) (Vecchiarelli, M.J.); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *9 (N.D. Ohio Apr. 4, 2012) (White, M.J.); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005) (finding that neither SSR 96-7p nor the regulations "require the ALJ to analyze and elaborate on each of the seven factors when making a credibility determination"). SSR 16-3p itself states that where "there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor," but rather will only "discuss the factors pertinent to the evidence of record." *Id.* at *8. Here, as LDS's impairments were based primarily on educational records rather than medical treatment records, many of the factors that typically considered were simply not germane (*i.e.* the location, duration, frequency, and intensity of symptoms; medications, and the effects thereof).

Given the high level of deference owed to an ALJ's findings with respect to the evaluation of a claimant's alleged symptoms and resulting limitations, under the circumstances presented herein, the court cannot find the ALJ's credibility analysis was deficient. Therefore, Plaintiff's second assignment of error is without merit.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: September 30, 2021